A. Clifford Edwards
Triel D. Culver
A. Christopher Edwards
John W. Edwards
EDWARDS & CULVER
1648 Poly Drive, Suite 206
Billings, Montana 59102
Telephone: (406) 256-8155
Facsimile: (406) 256-8159
triel@edwardslawfirm.org
chris@edwardslawfirm.org
john.edwards@edwardslawfirm.org

Jeffrey Kaliel, *pro hac vice*
Sophia Gold, *pro hac vice* pending
KALIEL PLLC
1875 Connecticut Avenue NW, 10th Floor
Washington, DC 20009
Telephone: (202) 300-4783
jkaliel@kalielpllc.com
sgold@kalielpllc.com

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF MONTANA, BILLING DIVISION**

| | |
|---|---|
| BRANDY MORRIS and BRENDA GRAY, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>FIRST INTERSTATE BANK,<br><br>Defendant. | Cause No. 1:21-cv-00076-DWM-TJC<br><br>Judge: Donald W. Molloy<br><br>**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION TO REMAND** |

COME NOW the Plaintiffs, by and through their attorneys of record, Edwards and Culver, and Kaliel Gold, PLLC and pursuant to 28 U.S.C.§1447(c), file Plaintiffs' Reply Brief in Support of Motion to Remand.

I. **INTRODUCTION**

First Interstate bears the burden of establishing by a preponderance of the evidence that federal jurisdiction pursuant to the Class Action Fairness Act ("CAFA") is met. Plaintiffs' Motion to Remand challenged Defendant's failure to "plausibly allege" that the amount in controversy exceeded CAFA's $5 million jurisdictional threshold, as the Notice of Removal was unreasonably based solely upon its attorney's opinion of damages at issue in cases involving claims made against unrelated financial institutions. Plaintiffs' Motion further contended that one of CAFA's Home State Controversy exceptions likely applies where approximately one-third of Defendant's branches are located in its home state of Montana. In the alternative, Plaintiffs requested limited jurisdictional discovery regarding the actual amount of allegedly improper Fees collected during the class period and class members' citizenship.

Defendant now proffers two additional declarations—one from Heather Koo of Ankura Consulting and the other from Josh Botnen of First Interstate—which, respectively, attest to potential damages and mailing addresses for current First Interstate accountholders. In each, however, key facts are unclear or lacking. For

2

example, as to the amount in controversy, the Koo Declaration does not disclose the estimated class size, nor the amount of actionable Fees at issue. Thus, this "evidence" does nothing to prove that the amount in controversy places this case in federal court. As to the Botnen Declaration, although there is now more evidence to support that more than one-third of accountholders may possibly be citizens of Montana to invoke the Discretionary Home State Exception, proof of address is not prima facie evidence of citizenship. Such evidence runs afoul of well-established Ninth Circuit law that holds Defendant "cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Ibarra v. Manheim Invs., Inc.,* 775 F.3d 1193, 1197 (9th Cir. 2015). Because Defendant's evidentiary proof is insufficient to prove CAFA jurisdiction by a preponderance of the evidence, remand of the action is required. At a minimum, this Court should permit the parties to conduct jurisdictional discovery tailored to the amount in controversy and class member citizenship because "jurisdictional finding[s] of fact should be based on more than guesswork." *Mondragon v. Capital One Auto Finance,* 736 F.3d 880, 884 (9th Cir. 2013).

## II.    ARGUMENT

### A. Plaintiffs Properly Challenged Defendant's Notice of Removal

At the outset, Defendant argues that "Plaintiffs' counsel…offers no evidence to rebut First Interstate's plausible allegations." (Dkt. No. 35, "Opp." at 1.) However,

Plaintiffs are <u>not</u> required to submit evidence regarding the amount in controversy where Defendant initially fails to assert a plausible allegation as to the same in its Notice of Removal (the "Notice"). In its Notice, Defendant merely regurgitates the varying remedies requested in Plaintiffs' Prayer and plainly concludes that "their claims, nationwide classes, and broad request for relief, will undoubtedly exceed $5,000,000." (Notice at ¶¶ 15-16.) The Richter Decl. submitted in conjunction with the Notice references "potential damages that may be at issue in these types of cases" and concludes that the total claimed damages here will exceed $5 million. (Dkt. No. 4, Richter Decl. at ¶¶ 5-6.) Plaintiff's Motion to Remand specifically argues that Defendant has not made the requisite threshold showing that damages exceed $5 million because its argument "is based only on unsupported assumptions" made in the Richter Decl. (Dkt. 27, "Mot." at 7)—those assumptions being that claimed damages in other cases necessarily indicate the damages at issue here. Indeed, the Richter Decl. attempts to compare counsel's knowledge of damages claimed in cases against other financial institutions to the instant action, but unreasonably assumes that each of those cases involve the same or similar class size, class period, and total amount of actionable fees collected. These unsupported assumptions do not amount to a "plausible allegation" that the requisite amount in controversy is met, and where that is true, Plaintiffs are under no obligation to submit evidence to refute this

conclusory allegation. *Mohammed v. American Airlines, Inc.,* No. 5:19-cv-01540-EJD, 2019 WL 5887105, *4 (N.D. Cal. Nov. 12, 2019).

The *Mohammed* decision illustrates this point. In *Mohammed,* the court granted remand in a wage and hour class action where the defendant's purported damages calculation was not based upon the actual number or reasonable estimate of employees encompassed in the plaintiff's proposed class and subclasses, nor the actual number or reasonable estimate of the employees' hourly wages. 2019 WL 5887105, at *4. The court explained because "CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation… Defendant's calculation [which] is not adequately supported by real evidence or reasonable assumptions based upon that evidence" was insufficient to satisfy its burden. *Id.* Just like the *Mohammed* defendant's calculations were insufficient because they were based on vague underlying factual support about class size and relevant wages, so too is First Interstate's conclusion unsubstantiated because First Interstate does not set forth an actual or reasonable estimate of class members and corresponding relevant Fees upon which to base a damages calculation. And where these key components are lacking, Plaintiffs are not required to submit proof to rebut Defendant's unreasonable assumptions. *Id.*

It is for this reason why Defendant's reliance on *Salter v. Quality Carriers, Inc.,* 974 F.3d 959 (9th Cir. 2020) is inapposite because unlike First Interstate, the

removing party in that case satisfied its requisite burden by making "plausible allegations" based on "reasonable assumptions" that federal jurisdiction is warranted. *See Salter,* 974 F.3d at 964 (in wage and hour class action, concluding the plaintiff failed to challenge the truth of the defendant's specific factual allegations that included detailed numeric data based on the defendant's records, such as the number of contractors who performed the work at issue and the exact monetary figures of what the defendant deducted from its truck drivers' weekly settlements in fuel purchases). Thus, Plaintiffs' challenge to First Interstate's amount in controversy allegations should be construed as a factual attack, rather than a facial attack, because Plaintiffs *did* argue that Defendant's allegations were unreasonable and based upon unsupported assumptions made in the Richter Decl. *See* Mot. at 7. No more was required of Plaintiffs because First Interstate's Notice failed to make any plausible factual allegations and in fact, lacked any factual assertions about how counsel's knowledge of damages claimed in these types of cases against other financial institutions equates to damages over $5 million in this case. *See Harris v. KM Industrial, Inc.,* 980 F.3d 694, 700 (9th Cir. 2020) (a factual attack need not require "evidence outside the pleadings," but rather, "need only challenge the truth of defendant's jurisdictional allegations by making a reasoned argument as to why any assumptions on which they are based are not supported by evidence.").

Similarly, as to the home state controversy exception, Plaintiffs explicitly challenged the truth of Defendant's class member citizenship allegations by citing First Interstate's website to reasonably conclude that approximately (at least) one-third of class members are citizens of Montana based on Defendant's branch locations. (Mot. at 12.) Thus, *Ehrman v. Cox Commc'ns, Inc.* is also distinguishable because the plaintiff there did not factually challenge the defendant's jurisdictional allegations. 932 F.3d 1223, 1228 n.1 (9th Cir. 2019) (holding because the plaintiff did not factually contest the defendant's jurisdictional allegations in a California class action that all class members were citizens of California, the defendant did not need to provide evidence in support thereof, but noting that "had Ehrman challenged the truth of the jurisdictional allegations in Cox's notice of removal, the district court should have permitted jurisdictional discovery[.]").

### B. **Defendant Fails to Establish the Amount in Controversy Exceeds $5 Million**

Next, despite the introduction of additional evidence, Defendant still fails to satisfy its burden that the amount in controversy exceeds $5 million because its evidentiary support is inadequate. Heather Koo of Ankura Consulting ("Koo Decl.") allegedly calculated the potential damages in this case based on an *extrapolation* of a sample of the class across the entire class period. (Mot. at 5.) Ms. Koo asserts that she was provided transactional data for all First Interstate customers from December

7

30, 2011 to February 1, 2021, but due to the large volume of data, was only able to extract a sample of formatted data for one year and calculate APPSN and Retry Fees for the class during this 1-year period, and then extrapolate that amount across the entire class period. (Koo Decl. ¶¶ 3-4.) Based on this calculation alone, Ms. Koo determined that the damages claimed by Plaintiffs in this case "for both Retry Fees and APPSN Fees likely will be in excess of $5 million." (*Id.* ¶ 5.) Critically, however, in reaching this conclusion several foundational components are unclear. For example, was First Interstate engaging in the alleged improper conduct as to their assessment of both types of Fees for the duration of the entire class period? Was the practice the same or similar during the "sample" period? If not, then an extrapolation of the damages ascertained from the sample period across the entire class period would be improper. Further to this point, it is unclear whether the "volume of data" provided to Ms. Koo encompassed *all* APPSN and Retry Fees collected by First Interstate, or rather, was limited to only those collected Fees that Plaintiffs complain constitute a breach of its contractual promises with accountholders. Plaintiffs should be able to test the veracity of this conclusion through limited jurisdictional discovery, which will include written requests aimed at determining the actionable total amount of collected Fees at issue.

    Moreover, this discovery will provide a sufficient basis upon which to base the calculation for a potential attorneys' fee and punitive damages award.

Defendant's calculation remains unsupported at this juncture. For instance, the second Declaration of Stuart Richter generally asserts that based on his experience handling other class action cases that have alleged the same two theories of improper APPSN Fees and Retry Fees and the attorneys' fees expended by class counsel in those cases, the total attorneys' fees in this case will be more than $1 million. (Dkt. No. 35-1, Richter Decl. ¶¶ 2-3.) But this conclusion similarly rests upon unsupported assumptions, such as the duration of active litigation and the amount of work and time expended in each case. To illustrate, for each case the Declaration references, what were the respective class sizes and damages at issue? How long were those cases in active litigation, at what stage did they resolve, and how much time did counsel expend before resolution? Simply citing numerous cases that involved similar overdraft fee claims will not suffice to meet Defendant's burden of establishing the amount in controversy. *Aguilar v. Wells Fargo Bank, N.A.,* No. ED CV 15-01833-AB (SPx), 2015 WL 6755199, at *5 (C.D. Cal. Nov. 4, 2015) (concluding that a declaration submitted by the defendant's attorney that cited a number of employment discrimination cases it contended were similar to the action to support an emotional distress damages award to establish CAFA's amount in controversy requirement was "speculative" and did "not support a conclusion that Plaintiff will be awarded emotional distress damages in the range that Defendant identifies."). Plainly, Defendant provides no baseline amount of damages in this case

upon which a reasonable attorneys' fee award can be estimated or compared to the "similar" cases referenced[1]. *Marshall v. Safeco Ins. Co. of Illinois,* 2020 WL 773420, *6 (D. Mont. Feb. 18, 2020) ("Where the defendant's fee estimate is based on a conjectural damages calculation, however, it is insufficient to use as a basis for calculating the amount in controversy."). At bottom, Defendant has failed to establish the amount in controversy exceeds CAFA's threshold, thereby requiring remand. Alternatively, jurisdictional discovery must be permitted to determine the amount in controversy.

### C. **Defendant's Evidence Regarding Class Members' Addresses Does Not Resolve the Home State Controversy Inquiry and Further Indicates Jurisdictional Discovery is Warranted**

Next, because it is Plaintiffs' burden to prove that a CAFA exception like the Home State Controversy applies, Plaintiffs must be permitted to conduct limited

---

[1] As for potential punitive damages award and/or injunctive relief award, Defendant still fails to meet its burden to demonstrate how these prospective amounts add to the amount in controversy. Defendant asserts that injunctive relief "could impact future fee revenue" and punitive damages could potentially result in a "two-fold" increase, but nevertheless offers no evidence from which it can base any estimate or concrete figures. *See e.g., Marshall,* 2020 WL 773420 at *5 (punitive damages may be considered in determining the amount in controversy where defendant introduces evidence of factually analogous cases where punitive damages were awarded); *Gunaratna v. Country Life, LLC,* No. CV 19-7095-GW-PLAx, 2019 WL 5295741, *3 (C.D. Cal. Oct. 10, 2019), citing *Ibarra,* 775 F.3d at 1197 (finding defendant's "scant evidence" to argue that an injunction requiring a label change of its product would cause it to suffer losses exceeding $5 million where it produced past sales data but failed to provide concrete numbers showing how sales were likely to increase and was "too attenuated and speculative" to find jurisdiction).

jurisdictional discovery as to this issue. *See Brinkley v. Monterey Fin. Servs.,* 873 F.3d 1118, 1121 (9th Cir. 2017). Defendant submits the Declaration of Josh Botnen, Senior Vice President, Chief Data and Analytics Officer of First Interstate Bank to establish that 38.5% of addresses for "current" accountholders are in Montana. (Botnen Decl. ¶ 2.) This attestation alone is enough to establish that the Discretionary Home State Controversy Exception *may* apply, as more than one-third of putative class members reside in Montana. *C.f. Mondragon,* 736 F.3d at 885-86 (stating a person's state of domicile is at least some proof of citizenship and such presumption may be relied upon by the party seeking remand under a CAFA exception). In total, however, this data does not paint the full picture of the relevant class because this percentage does not include accounts that are now closed but were active during a portion of the class period, nor does it account for the situation where a customer has moved to Montana but has failed to submit a notice of change of address to Defendant. (*Id.* ¶ 3.) Moreover, this data does not indicate how many accounts did not list an address for whatever reason, such as if that customer elects to receive statements by e-mail instead. (*Id.* ¶ 2.) Further, as acknowledged by Defendant, evidence of address alone is insufficient to establish citizenship. (Mot. at 9.) The only way this can be determined is by allowing Plaintiffs to take limited jurisdictional discovery of class member citizenship. Indeed, even in the *King v. Great American Chicken Corp., Inc.* case that Defendant cites did the Ninth Circuit

11

advise the district court upon remand that the plaintiff should be permitted to conduct jurisdictional discovery as to class member citizenship before renewing her motion to remand the action to state court[2]. 903 F.3d 875, 880-81 (9th Cir. 2018) ("Though we have concluded that King did not prove by a preponderance of the evidence that greater than two-thirds of the putative class members were California citizens, it is clear from the record that King did not have a full opportunity to do so.") Thus, such discovery is necessary and should be allowed here.

Since jurisdictional discovery is routinely permitted in this Circuit to allow a plaintiff to establish class members' citizenship to prove up a CAFA exception, this Court should similarly allow tailored jurisdictional discovery here. *See e.g., Adams v. W. Marine Prod., Inc.,* 958 F.3d 1216, 1219 (9th Cir. 2020) (affirming remand after court-ordered jurisdictional discovery in the lower court revealed that the discretionary home state exception applied); *Spargifiore v. Panda Restaurant Group, Inc.,* No. 20-cv-09837-AB-MRW, 2021 WL 405815, *1 (C.D. Cal. Feb. 4,

---

[2] The *King* decision further supports Plaintiffs' request for jurisdictional discovery. The Ninth Circuit held that plaintiff failed to meet her burden that more than two-thirds of the class were California citizens where she only submitted a stipulation by Defendant that stated, "at least two-thirds (at least 67%) of the putative class are shown with addresses in California." *King,* 903 F.3d at 877. In so holding, the Court relied in part upon the principle that a person's "residential address in California does not guarantee that the person's legal domicile was in California" and thereafter ordered the lower court to give the plaintiff an opportunity to seek additional jurisdictional discovery to gather sufficient evidence to support a finding by a preponderance of the evidence that greater than two-thirds were California citizens. *Id.* at 879.

2021) (ordering the defendant to produce jurisdictional discovery regarding class member citizenship because such "information is in the sole possession of defendant"); *Tapia v. Panda Express, LLC,* No. CV162323DSFRAOX, 2016 WL 10987316, at *1 (C.D. Cal. June 7, 2016) (ordering the defendant to produce evidence related to class members' citizenship so that it could be determined whether a CAFA exception applied); *Calderon v. Total Wealth Management, Inc.,* 2015 WL 5916846, *3 (S.D. Cal. Oct. 8, 2015) (ordering jurisdictional discovery and stating it would be "most efficient to allow Plaintiffs to conduct limited and expedient jurisdictional discovery tailored to the issue of class membership."); *Mondragon v. Capital One Auto Finance,* 736 F.3d 880, 886 (9th Cir. 2013) (allowing the plaintiff to renew his motion to remand after conducting jurisdictional discovery tailored to proving that more than two-thirds of putative class members are citizens of California to invoke a CAFA exception).

Now that Defendant's submission has revealed that more than one-third of current First Interstate accountholders maintain addresses in Montana, the Discretionary Home State factors the Court applies in determining whether to decline jurisdiction still weigh in favor of remand to state court—where this case has already been pending for eighteen months. The alleged harms occurred in Defendant's corporate offices in Montana where Defendant designed and implemented First Interstate's Fee policies and practices and selected the contractual

language used in its Account Documents, 28 U.S.C. §§ 1332(d)(3)(A); and there is no evidence that Plaintiffs artfully plead their claims to avoid federal jurisdiction, (d)(3)(C). Nevertheless, permitting jurisdictional discovery as to class member citizenship should resolve some of the remaining factors, as it may confirm the aggregate number of Montana citizen class members outnumber those from other states. *See e.g.,* 28 U.S.C. §§ 1332(d)(3)(D)-(E). Thus, any detailed weighing of these factors should be postponed until after jurisdictional discovery has been completed.

### III.   **CONCLUSION**

In light of the foregoing, Plaintiffs respectfully request that the Court enter an order remanding the action to the Montana Thirteenth Judicial District Court for Yellowstone County. Alternatively, the Court should permit the parties to conduct jurisdictional discovery as to both the amount in controversy requirement and CAFA's home state controversy exception.

DATED this 3rd day of September, 2021.

                                                    EDWARDS & CULVER

                                                    A. Clifford Edwards
                                                    Triel D. Culver
                                                    A. Christopher Edwards
                                                    John W. Edwards
                                                    *Attorneys for Appellees / Plaintiffs*

Jeffrey Kaliel, *pro hac vice*
Sophia Gold, *pro hac vice* pending
KALIEL GOLD PLLC
*Attorneys for Plaintiffs*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that this *Plaintiffs' Reply Brief in Support of Motion for Remand* is double spaced; the document is proportionately spaced using Times New Roman font with 14 characters per inch; and contains 3,134 words, excluding this Certificate of Compliance, and the Certificate of Service.

DATED this 3rd day of September, 2021.

EDWARDS & CULVER

*/s/ Triel D. Culver*
A. Clifford Edwards
Triel D. Culver
A. Christopher Edwards
John W. Edwards
*Attorneys for Appellees / Plaintiffs*

Jeffrey Kaliel, *pro hac vice*
Sophia Gold, *pro hac vice* pending
KALIEL GOLD PLLC
*Attorneys for Plaintiffs*